Larry **BOYD**, Appellant,

v.

**DIVERSIFIED FINANCIAL SYSTEMS, Appellee.**

No. 05–97–00398–CV.

Court of Appeals of Texas, Dallas.

Sept. 24, 1999.

Richard Abernathy, Abernathy, Roeder, Robertson & Joplin, Frisco, for appellant.

Robert Louis Pou, Dallas, Levon G. Hovnatanian, The Holman Law Firm, P.C., Houston, for appellee.

Before Justices LAGARDE, BRIDGES, and ROACH.

## OPINION

Opinion By Justice LAGARDE.

Larry Boyd appeals the judgment following a trial before the court in which he was found liable to Diversified Financial

Systems in the amount of $55,261.30 on its suit on a guaranty signed by Boyd. Boyd brings sixteen [1] points of error contending the trial court erred by: (a) admitting copies of the note and guaranty; (b) concluding that Diversified was the owner and holder of the note and the owner and transferee of the guaranty; and (c) concluding that Boyd's personal defense was ineffective. We overrule the points of error and affirm the trial court's judgment.

## FACTUAL BACKGROUND

On September 7, 1988, Boyd signed a guaranty in favor of Chisholm National Bank for any past and future indebtedness incurred by Houston Trunk Factory. On March 26, 1990, Houston Trunk Factory signed a promissory note in the principal amount of $39,342.46 payable to Chisholm National Bank and secured by all of Houston Trunk Factory's collateral. The note matured pursuant to its terms on September 26, 1990. On August 30, 1990, Chisholm National Bank was declared insolvent, and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver of Chisholm National Bank. On June 22, 1994, the FDIC agreed to sell the note and any "collateral documents," which included any guaranties, to Diversified. The note was endorsed from the FDIC in its corporate capacity to Diversified.

Diversified sued Boyd on his guaranty. In his responses to Diversified's requests for admissions, Boyd admitted signing the note and the guaranty.

## STANDARD OF REVIEW

Findings of fact in a case tried before the court have the same force and effect as a jury's verdict on special issues. *See Gregory v. Sunbelt Sav., F.S.B.*, 835 S.W.2d 155, 158 (Tex.App.-Dallas 1992, writ denied); *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ. App.-Houston [14th Dist.] 1977, writ ref'd

n.r.e.). We review the trial court's findings of fact by the same standards that are applied in reviewing the evidence supporting a jury's answers. *See Zieben v. Platt*, 786 S.W.2d 797, 799 (Tex.App.-Houston [14th Dist.] 1990, no writ).

In reviewing a no-evidence point of error, we consider only the evidence and inferences that support the challenged finding. *See Gregory*, 835 S.W.2d at 158. All contrary evidence and inferences are disregarded. *See Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex. 1990). We uphold the trial court's findings if there is more than a scintilla of evidence to support them. *See Stedman v. Georgetown Sav. & Loan Ass'n*, 595 S.W.2d 486, 488 (Tex.1979).

In reviewing a factual-sufficiency point of error, we consider all of the evidence. A finding will be set aside only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is wrong and manifestly unjust. *See Gregory*, 835 S.W.2d at 158.

Challenges to the trial court's conclusions of law are reviewed as a matter of law, not on sufficiency of the evidence grounds. *See McLendon v. McLendon*, 862 S.W.2d 662, 674 (Tex.App.-Dallas 1993, writ denied); *Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.), *overruled on other grounds by Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 894 (Tex. 1991). An erroneous conclusion of law is not binding on this Court. *See Bantuelle v. Williams*, 667 S.W.2d 810, 818 (Tex. App.-Dallas 1983, writ ref'd n.r.e.) (per curiam). When a party attacks conclusions of law on appeal, we have the power and the duty to independently evaluate those conclusions. *See MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 10 (Tex. App.-Dallas 1988, writ denied). A trial

---

**1.** Boyd's points of error are numbered one through fifteen, but two separate points of error are labeled "point twelve."

court's application of law to facts is accorded limited deference. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding). A failure of the trial court to analyze or apply the law correctly is an abuse of discretion. *See id.*

## ADMISSION OF THE NOTE AND GUARANTY

■ In his first, third, and eighth points of error, Boyd contends the trial court erred in admitting Plaintiff's Exhibits 1 and 2, the note and the guaranty respectively, because they are hearsay. The trial court concluded that the exhibits were admissible as operative facts regardless of their hearsay status.[2]

Under Texas Rule of Civil Procedure 93(7), when a claim is founded on the execution of a written instrument, and the defendant does not deny under oath the execution of the instrument, "the instrument shall be received in evidence as fully proved." TEX.R. CIV. P. 93(7); *see Cockrell v. Republic Mortg. Ins. Co.*, 817 S.W.2d 106, 111 (Tex.App.-Dallas 1991, no writ); *Hanks v. NCNB Tex. Nat'l Bank*, 815 S.W.2d 763, 765 (Tex.App.-Eastland 1991, no writ). Diversified's petition shows Diversified's claims are founded on the execution of the note and the guaranty. Not only did Boyd not deny under oath that he executed the documents, he admitted signing the note and the guaranty. Diversified's representative testified that it possessed the originals of the exhibits and that the proffered exhibits were true and exact copies of the originals. Diversified met the requirements for admission of Plaintiff's Exhibits 1 and 2. Therefore, the documents were admissible regardless of whether they qualified as an exception to the hearsay rule under Texas Rule of Civil Evidence 803. *See Hanks*, 815 S.W.2d at 765.

■ Boyd relies on *Sholdra v. Bluebonnet Savings Bank*, 858 S.W.2d 533 (Tex. App.-Fort Worth 1993, writ denied). In *Sholdra*, a bank sought to introduce an exhibit illustrating the extent of the deficiency on a note. The sponsoring witness testified the exhibit was prepared by or with information from persons with knowledge of the delinquent condition of the loan. The court of appeals held the trial court should have excluded the exhibit under rule of civil evidence 803(6) because the witness did not testify that the exhibit was prepared by persons with knowledge of the information in the exhibit. *See id.* at 535. *Sholdra* is distinguishable because the excluded documents were not the documents on which the claim was founded. In this case, rule 803(6) does not apply to Plaintiff's Exhibits 1 and 2 because the note and the guaranty are the documents on which Diversified's claim was founded. We hold the trial court did not err in admitting Plaintiff's Exhibits 1 and 2. We overrule Boyd's first, third, and eighth points of error.

## HOLDER OF THE NOTE

In his second, fifth, sixth, ninth, tenth, and fifteenth points of error, Boyd contends the trial court erred in determining that Diversified is the owner and holder of the note. Under section 1.201(20) of the Texas Business and Commerce Code, a person is the holder of a negotiable instrument if he is in possession of the instrument and the instrument is payable to him or to bearer. *See* TEX. BUS. & COM.CODE ANN. § 1.201(20) (Vernon Supp.1999). The note was payable to Diversified because it was indorsed to Diversified. *See* TEX. BUS. & COM.CODE ANN. § 3.204 (Vernon Supp.1999).

■ Boyd argues the note is not payable to Diversified because it was not

2. The trial court's conclusion of law 6 states: When suit is brought on notes and guaranties, the documents themselves are admissible. as operative facts and the basis of the holder's cause of action as fully proved and

without necessity of further authentication, when not denied under oath pursuant to Texas Rule of Civil Procedure 93(7).
(Citation omitted.)

properly indorsed by the FDIC. Boyd asserts the record shows the FDIC in its receivership capacity received the note from Chisholm National Bank. The indorsement on the note states:

Pay to the order of Diversified Financial Systems, Inc.

Without Recourse

Federal Deposit Insurance Corporation

In its Corporate Capacity

By: /_____ [George Chalmers]

George W. Chalmers, Attorney in Fact

Boyd argues that the lack of an indorsement from the FDIC in its receivership capacity to the FDIC in its corporate capacity invalidated the indorsement from the FDIC in its corporate capacity to Diversified. We disagree. In *FDIC v. Patel,* 46 F.3d 482 (5th Cir.1995), the Fifth Circuit held the FDIC in its corporate capacity could bring suit on a note even though the owner and holder of the note was the FDIC in its receivership capacity because "the FDIC was without question the holder of the Note." *Id.* at 485. Likewise, in this case, when the FDIC in its receivership capacity received the note from Chisholm National Bank, the FDIC was without question the holder of the note. Therefore, the lack of an indorsement from the FDIC in its receivership capacity to its corporate capacity did not affect the validity of the indorsement to Diversified. Boyd's argument lacks merit.

■ Boyd also argues the record shows that Diversified could not be a holder of the note because it did not have possession of the note. Marilyn Lowery, an assistant manager at Diversified, testified the note and guaranty were kept in the vault of Heller Financial, "our investor on this package." This vault was also described as being "the vault of the headquarters of Diversified." Although the record does not show the relationship of Heller Financial to Diversified, Lowery's testimony that the vault containing the note and guaranty is "the vault of the headquarters of Diver-

sified" is sufficient evidence to support the trial court's implied finding that Diversified had "possession" of the note. Boyd's argument lacks merit.

We overrule Boyd's second, fifth, sixth, ninth, tenth, and fifteenth points of error to the extent they concern Diversified's status as owner and holder of the note.

## OWNER OF THE GUARANTY

In his fifth, sixth, twelfth (both of them), thirteenth, and fifteenth points of error, Boyd contends that the trial court erred in determining that Diversified was the owner of the guaranty. The Loan Sale Agreement between the FDIC and Diversified provided that the FDIC was selling Diversified all "Loans" specified. The agreement defined "Loans" as including the promissory note and "all rights powers, liens, or security interests of the [FDIC] in or under any collateral document." The agreement defined "Collateral Document" as including a personal guaranty. Reading these provisions together, the FDIC sold Diversified the promissory note and any guaranty of the note in its possession. Although no witness testified how Diversified came to have possession of the guaranty, it is a reasonable inference from the evidence that it obtained the guaranty from the FDIC as part of the purchase of the loan.

■ Boyd argues the evidence is insufficient to show Diversified owned the guaranty because Diversified did not follow the terms of the loan agreement, which Boyd asserts required Diversified to obtain a separate written assignment of the guaranty from the FDIC. The provision of the loan agreement Boyd relies on states:

*Assignment of Loans and Collateral Documents:* Seller [the FDIC] shall execute and deliver to Buyer [Diversified] such instruments submitted to it by Buyer within 90 days after Closing as may be required by applicable law to transfer to Buyer the right, title and interest of Seller in the Loans and such

of the Collateral Documents related to such Loans as the Buyer may request; *provided, however,* that the Buyer shall be required to prepare and furnish such instruments in appropriate form....

Boyd argues in his brief, "The foregoing language clearly indicates that ... to obtain the Collateral Documents the Plaintiff [Diversified] had to specifically prepare and furnish to the Seller the transfer instrument required." We disagree with Boyd's interpretation. The language provides that if the buyer wanted a document signed by the FDIC to prove transfer of title to the loan and collateral documents, the FDIC would execute any documents submitted to it that might be necessary to transfer title to the loan and any collateral documents. It does not prohibit transfer of title of the collateral documents without a written assignment. As discussed above, the record supports the trial court's finding that Diversified "is a transferee of the ... guaranty agreement from the Federal Deposit Insurance Corporation," even without a document expressly transferring the guaranty. Boyd's argument lacks merit.

Boyd also relies on *Ashcraft v. Lookadoo,* 952 S.W.2d 907 (Tex.App.-Dallas 1997) (en banc), *pet. denied per curiam,* 977 S.W.2d 562 (Tex.1998), in support of his argument that Diversified did not sufficiently prove its ownership of the guaranty. In *Ashcraft,* Lookadoo signed a guaranty of the debt. Ashcraft purchased the debt and all collateral documents from the RTC. Neither the original guaranty nor a copy was in the file Ashcraft received from the RTC, and no original of the guaranty could be found. *See id.* at 907. Ashcraft found a copy of the guaranty in the files of the law firm that prepared the documents for the lender.[3] *See id.* at 913. This Court held that the law firm's copy of the guaranty showed the terms of the guaranty at the time of the loan in 1984, but the

firm's having a copy of the guaranty did not show that the guaranty was still in effect in 1990 when the RTC acquired the note. *See id.* We concluded "from this evidence that Ashcraft never proved that the RTC was the holder and owner of the guaranty at the time it assigned the note to Ashcraft." *Id.* at 913–14.

This case is distinguishable from *Ashcraft.* Here, there is no indication that the guaranty was not in the FDIC's file. The original guaranty exists, and Diversified has possession of it. We conclude the trial court did not err in determining that Diversified owns the guaranty. We overrule Boyd's fifth, sixth, twelfth (both of them), thirteenth, and fifteenth points of error to the extent they concern the guaranty.

## PERSONAL DEFENSE

In his seventh and eleventh points of error, Boyd contends that the trial court erred in determining that Diversified was a holder in due course and that Boyd's personal defense was ineffective. The only personal defense Boyd asserted was that Diversified or its predecessors in interest failed to file a "continuation statement" concerning the collateral, which caused the perfection of the security interest in Houston Trunk Factory's inventory to lapse. *See* Tex. Bus. & Com.Code Ann. § 9.403(b) (Vernon 1991). Boyd asserts that the lack of perfection of the security interest prevents him from exercising his right of subrogation against the collateral.

In its findings of fact and conclusions of law, the trial court stated:

Any personal defenses, such as breach of an implied duty to maintain perfection of the security interest, are ineffective against a holder in due course. Therefore, the issue that this court must decide is whether or not Plaintiff proved at trial record [sic] that it is a holder in due

---

**3.** The opinion in *Ashcraft* states that the law firm "produced a copy of a guaranty agreement in Lookadoo's name. [The law firm] copied the guaranty from a duplicate closing binder of the original 1984 loan transaction." The opinion does not indicate whether this copy of the guaranty agreement was signed by Lookadoo.

course of this note or that there was no express or implied duty to maintain perfection of the security interest.

After defining the issue, the trial court did not resolve it. The findings of fact and conclusions of law do not set out whether Diversified is a holder in due course or whether there was a duty to maintain perfection of the security interest.

 Diversified argues that the record shows Boyd expressly waived any defense based on the lack of perfection of the security interest. The guaranty states: "You [the lender] may, without notice to me: ... (3) fail to perfect any security interest or otherwise impair any collateral...." This provision resolves the issue before the trial court of whether there was any "express or implied duty to maintain perfection of the security interest." We hold Boyd expressly waived any right to the perfection of the security interest. *Cf. SEI Bus. Sys., Inc. v. Bank One Texas, N.A.,* 803 S.W.2d 838, 840 (Tex.App.-Dallas 1991, no writ) (guarantor expressly waived right to have lender dispose of collateral before pursuing guarantor). Therefore, the trial court did not err in determining that Boyd's personal defense was ineffective. Whether Diversified was a holder in due course is irrelevant because Boyd expressly waived in the guaranty the only defense he asserted. *See* TEX. BUS. & COM. CODE ANN. § 3.305 (Vernon Supp.1999). We overrule Boyd's seventh and eleventh points of error.

## REMAINING POINTS OF ERROR

In his fourth point of error, Boyd contends that the trial court erred by concluding as a matter of law that a witness's statement concerning execution and delivery, true and correct copies, and amounts due were statements of fact and not legal conclusions. Boyd presents no argument or authorities in support of this point of error. Accordingly, he has waived this point of error. *See Warehouse Partners v. Gardner,* 910 S.W.2d 19, 26 (Tex.App.-Dal-

las 1995, writ denied). We overrule Boyd's fourth point of error.

 In his fourteenth point of error, Boyd contends that the trial court erred in finding as a fact that Boyd failed to deny under oath Diversified's legal capacity to sue on the guaranty. We agree that the trial court erred in making this factual finding because Boyd's second amended original answer shows that he denied under oath "that the Plaintiff can recover in the capacity in which it sues." However, any error was harmless because, as holder and owner of the note and owner and transferee of the guaranty, Diversified could recover in the capacity in which it sued. *See* TEX. BUS. & COM.CODE ANN. § 3.301 (Vernon Supp.1999); *Jackson T. Fulgham Co. v. Stewart Title Guar. Co.,* 649 S.W.2d 128, 133 (Tex.App.-Dallas 1983, writ ref'd n.r.e.). We overrule Boyd's fourteenth point of error.

We affirm the trial court's judgment.